UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| MAIGAN FRANCIS | § | CIVIL ACTION NO: 5:19-CV-14315 |
| | § | |
| VERSUS | § | SECTION: A/2 |
| | § | |
| AMERICAN FEDERATION FOR CHILDREN, INC. | § | DISTRICT JUDGE JAY C. ZAINEY |

**<u>AFFIDAVIT</u>**

STATE OF TEXAS

COUNTY OF BRAZORIA

BEFORE ME, the undersigned authority, a Notary Public in and for the County and State aforesaid, personally came and appeared MAIGAN FRANCIS ("Appearer"), who, being by me first duly sworn, deposed, and said:

Appearer is a resident of Rosharon, Texas.

Appearer further certifies that:

1. She was hired by the American Federal for Children, Inc., for the position of Implementation Director for the State of Louisiana on February 29, 2016.

2. Lindsey Rust served as her immediate supervisor after she was hired.

3. In December of 2016 she met with John Schilling for her yearly performance review and was told she was doing a good job and she would receive a raise of $3,000.00.

4. Sometime in early 2017, Kelly Bottger became her immediate supervisor.

5. In December 2017 she met with John Schilling for her yearly performance review and was again told that she was doing a good job and would receive another raise of

**EXHIBIT A**

$3,000.00.

6. At no time prior to May 2018 was she told there problems in her job performance that needed improvement.

7. In May 2018, she announced her pregnancy to her co-workers and supervisors, including Kelly Bottger. She informed Bottger she would be taking maternity leave.

8. Soon after her announcement, she noticed a distinct change in Kelly Bottger's attitude and demeanor towards her. On multiple occasions Bottger made comments to her that Bottger did not understand how Appearer was going to be able to work with a newborn.

9. In July 2018, she attended a meeting with Kelly Bottger and Paul Dauphin, the purpose of which she was told was to discuss who would cover her work duties while she was on maternity leave as well as work to be performed upon her return. She recorded the meeting with her phone so that she would have the information for future reference.

10. In July 2018, she went on maternity leave for the birth of her son.

11. She returned to her full-time employment from her maternity leave on October 1, 2018.

12. Upon her return, she noticed that Bottger began making accusatory statements regarding her work and was behaving in a generally antagonistic manner towards her. This caused her to suffer increased anxiety and emotional distress.

13. On one occasion Bottger blamed Appearer and told her that she considered it to be an act of subordination by Appearer that another AFC employee attended a conference in Biloxi, after Bottger told her no one else should attend. Bottger blamed Appearer for this despite the fact that neither Appearer or Bottger had any authority over the other employee and that employee had cleared and approved her attendance with her supervisor.

**EXHIBIT A**

14. It was clear to Appearer that Bottger was creating issues with her work performance purposefully and blaming her for it.

15. On October 23, 2018, she attended a meeting in which Bottger blamed her for something for which she was not responsible. When she corrected the factual inaccuracies, Bottger became belligerent.

16. Because the harassment had reached an unbearable level, she complied with AFC's employee policies and filed a complaint of harassment by sending an email to Lindsey Rust, her former supervisor who she believed to be Bottger's supervisor as well.

17. She delivered her complaint by email at 1:04 p.m. on October 23, 2018, and informed Rust that she believed she was being targeted and harassed. Ex. A, Francis 001-002.

18. She spoke with Rust by phone shortly after sending the email to Rust. During the call, she reported Bottger's harassment of her and the fact that she believed that Bottger was harassing her as a result of her pregnancy and maternity leave.

19. She received no further information or follow up regarding her complaint.

20. On November 1, 2018, she was called to a meeting with John Schilling where Schilling informed her that her employment was being terminated due to the fact that AFC had chosen to "go in another direction." She was offered a severance package if she would agree to release any claims against AFC and agree to keep the terms of the severance agreement confidential. Ex. B. Francis 359-362.

.

**EXHIBIT A**

_____
Maigan Francis

SWORN TO AND SUBSCRIBED before me, Notary, on this 15th day of June, 2021, in _____ County, Texas.

LATISHA RIGGINS
Notary Public, State of Texas
Comm. Expires 03-26-2025
Notary ID 132999004

NOTARY PUBLIC

**EXHIBIT A**